2015, 2038, and 2039, Mr. Halpern. Yes, thank you, Your Honor, and may it please the Court. I'm here from the Perkins Coie firm, representing THX, and with me, the appellant, and with me is Mr. Eric Wiesenberg. Your Honors, this is an appeal from a decision of the Patent Trial and Appeal Board declaring two claims of the 483 patent, THX's 483 patent, unpatentable. And as obvious, the dispute turns on a single limitation, sound damping material forming sides of the sound duct, about which the parties dispute both disclosure and motivation as to two aspects. One is sidewall sound damping material, and the other is whether the references teach and motivate sidewall only sound damping so that covering a surface that must remain free of sound damping material in sound damping material is avoided. Let me pause before I barrel ahead and ask if you have any questions that you'd like to ask me. Proceed with your argument. Why does it have to be in all cases? It suggests using sound absorbing material. Why isn't that sufficient to suggest that it should be used? Because, Your Honor, we agree that there is a separate teaching of sound absorbing embodiment of the pressure absorbing material, but in that case, it's that embodiment that is the relevant disclosure. Apple made an argument that the pressure absorbing material, for example, is made of foam and foam is necessarily sound damping, so there's sort of a general teaching of sound damping material. And this passage that I quoted makes clear that that's not the case. There is this particular embodiment of pressure absorbing material with sound absorbency, and that is specifically a technique to absorb wind noise. So I can move on to that, why that also does not disclose the sound damping material of the claims. But I was first trying to establish that pressure absorbing material as such is something distinct, that Sedai explains defeats standing waves not by absorbing sound, but by creating an irregular path that causes there not to be a peak resonance at any one frequency. So no sound is being absorbed by that technique. The sound instead is being kind of manipulated by the dimensions of the duct. Well, there are different different embodiments, but you can see that Sedai allows for sound damping material, right? Yeah, but it allows for a particular technique of sound damping material, which is to absorb wind noise and its sound damping material. It teaches is frequency selective, so it absorbs in the high range the wind noise that's produced by the narrowing and constriction of Sedai's duct. And it specifically teaches also that it avoids absorbency in the base range, because Sedai is a base range speaker, so it wants to produce base sound, and it can damp out all of the high frequency sound. The claim requires that the sound damping material mitigate standing waves. That is the argument that Apple made below, and the board relied on a finding that the claim recites that the sound damping material mitigates standing waves. Those are two different techniques, and in fact, Apple's expert, Dr. Vipperman, admitted that Sedai does not teach to use sound damping material to absorb standing waves. So, moving on to motivation, the problem is even if one were to find that sound damping material is disclosed by Sedai, Sedai provides no motivation to combine it into the tube with Tominori, because the Tominori duct is straight. The parties agree that it is a straight duct that is trying to produce full range sound, and if you were to put this high frequency absorbing sound damping material into the Tominori duct, you would eliminate that feature of full range sound. You would be selectively damping out the high sounds and leaving the base sounds untouched. Apple's response to that was, well, but full range sound is not a claim limitation, but that's not the relevant consideration. The relevant consideration is would the references have worked with each other? Do their principles of operation suggest that you would make a successful combination? And Tominori says over and over again, its purpose is to produce, you know, it's in the abstract summary of the invention to produce full range sound across the whole frequency spectrum. But even if it has a particular purpose, that doesn't mean it couldn't be used, its teaching couldn't be used for an alternative purpose, right? But it is not motivated if the alternative purpose would conflict with one of the stated purposes of the Tominori invention. So are you arguing there's a teaching away? Yeah, that Tominori is teaching full range sound. And so the use of sound damping material that is frequency selective, that absorbs the high range sound, but avoids absorption in the low range, would give you an uneven response in Tominori. And if you look at Tominori's, I mean, it's really the entire discussion, he has his frequency response charts. And when he's explaining his various techniques, you know, putting the speaker at the antinode, for example, it's all to reduce the peaks and dips to try to get an even response across the whole frequency range. So to have frequency... Don't you need a lot more than alternative purposes to have an active teaching away from the prior art? Well, I think a conflict would be a teaching away, but I would add two more things. Tominori also doesn't want to lose sound altogether, right? And so there's unrebutted testimony by THX's expert, Dr. Elliott, that lining the duct walls with sound damping material would cost you signal in the same proportion that it would cost you noise. And so it would be disadvantageous, especially in a long duct like Tominori's, that was unchallenged and unrebutted by Apple's expert. In addition, I think it's noteworthy that Tominori really has all of the elements here for placing sound damping material on the sidewalls, and yet he still chose not to do it. In that he has sound damping material on the back wall, which he says is there to absorb standing waves, so he's aware of the technique. And as the board specifically noted, his frequency response measurements, for example, in figure 17, show lateral resonances, in other words side to side, and top to bottom resonance as the same kind of peaks of sound that he's trying to eliminate. So he had the technique, he had the unwanted unevenness in his frequency response, he talked about it, or he showed it, and yet he still chose not to extend his own sound damping material. The other thing I want to turn to is the only, you know, it was Apple's burden to prove this motivation, and the only evidence of motivation that they offered was their expert's testimony that this would be a routine design choice and one of a limited number of known solutions. And this court has repeatedly rejected that kind of conclusory expert testimony as sufficient to show. I don't think that's a fair summary of the expert testimony. He goes through and explains why Sinai discloses this and why there would have been a motivation to do this. Your Honor, I respectfully disagree. I mean, the only testimony is in paragraphs 112 and 113 of Dr. Vipperman's declaration, which is at A529 to 30. And all he says is it would have been one of a limited number of known solutions for further minimizing the presence of spurious resonances. Accordingly, it would have been obvious. Doing so would have been a routine design choice. And in fact, when he was asked about it in deposition, he acknowledged a couple of things. Apple's counsel acknowledged at the hearing that there was no technical analysis from its expert. So when—apologies, Your Honor, I'm trying to find it. Yeah, he also goes into Sinai and points out that Sinai says that you can have sound dampening material. It's only—in other words, he spends some time in discussing what you say is necessary, which is that Sinai suggests the use of sound damping material. Right, but the limitation doesn't just require sound damping material. It requires sound damping material on the sidewalls and not on the top and bottom walls. Well, he says he discusses the sidewalls, right? Yeah, but he doesn't give a reason why you would prefer that. I just—by the way, I found the discussion I was talking about. In the hearing, the administrative patent judge said, I don't see Dr. Vipperman addressing the acoustic rationale. This is at A364. And Apple's counsel responded, right, Dr. Vipperman doesn't see the acoustic differences as material to their combinability. Dr. Vipperman also admitted that when asked about Dr. Elliott's arguments as to why the references were incompatible, because you would be damping out signal in the same proportion that you would damp out noise, and it would conflict with the goals of Tom Inouye, he admitted that he didn't address any of those arguments. I mean, all he's given is this routine design choice. I think it would probably—oh, I'm into my rebuttal time—probably helpful to just explain the secret sauce of the patent is if you look at the record, all of the examples of using sound damping material and other techniques to damp standing waves or other kinds of sound waves, avoid loss of signal, right? There's a placement at an antinode. There's putting it against the back wall where only unwanted sound is striking. There's no example, and in SDI, you're only removing the high-frequency sound that you don't want. The patented invention, what it does by the narrowness of the duct and the broadness of the other face, is it moves all the resonant frequencies outside of the audible range in the broad face, and on the narrow side of the patent, you consequently, to have the same volume, have a very large number of resonant frequencies in a small area. And so when you damp that way, you get rid of a lot of resonances with minimal loss of signals because it's a small area. There's nothing in the references that anticipates that or suggests anything of the kind. So a teaching or a sort of ipsodixit of an expert to simply say, well, sound damping material was known, doesn't demonstrate any of the techniques that either the references are applying or that the Finchham patent suggests. Mr. Halperin, I think we want to dampen your sound waves. Save the rest for rebuttal? Yes, thank you. Mr. Fleming, you, of course, have a cross appeal. Do you want to say three minutes for that? Yes, please, Your Honor. And if you get to use that, that will be only for rebuttal if you get it. So please proceed. Thank you very much, Your Honor. Good morning, and may it please the Court. Mark Fleming on behalf of Apple, together with Kevin Goldman and Natalie Posse. THX's arguments on Claims 1 and 2 are all factual. They challenge the Board's factual findings on the scope and content of the prior art references and the motivation to combine them. As we explain in our briefs, we think these findings are well supported. I'm happy to answer any questions the Court has on them. I think the one thing I'd say on this issue about Tominori being a full-range sound reference is that this Court has made clear repeatedly, most notably in In Re Con, that just because the proposed obviousness combination might be somewhat less effective at serving the goals of one of the prior art references doesn't mean that the combination is nonetheless not obvious. In Con, the Court said that just because the combination results in a device that would be less effective for the purpose intended by Garwin, the teaching of the Garwin reference is not limited to the specific invention disclosed. Judge O'Malley, this goes to one of your questions. The fact that perhaps the combination would have been less effective at producing the particular signal that Tominori was looking for doesn't mean that the combination would nonetheless not have been obvious. It may have meant that you'd need to turn up the speaker or use a slightly more powerful speaker, but you would get the purer sound that Sedaya discloses that the use of sound-damping material on the sidewalls would show. The exception to the principle in Con is if the prior art reference goes so far as to teach away from the combination rather than simply not serving the purposes. So the question is, what is your response to your opponent's argument that there's actually teaching away? I don't recall that argument being made in any of the briefs. There certainly isn't any testimony that I know of that says that Tominori rises to the level of saying, do not put sound-damping material on any of the walls except for the back. He doesn't actually do it, but that's not a teaching away. If that were a teaching away, then there would never be an obviousness case because the whole premise of an obviousness argument is that no single reference satisfies all of the claim elements. So what we have here is a disclosure of sound-damping material at the back of the duct in Tominori, silence as to whether to put sound-damping material on the sidewalls, and then a disclosure in Sedaya of putting the sound-damping material on the sidewalls, and testimony of an expert saying that it would have been very easy for a skilled artisan to take that teaching and apply it in Tominori by bringing the sound-damping material down the sides. I would like to address our cross-appeal on Claim 3 because I think that is different in kind from THX's factual appeal. Here the board regrettably made an error of law in terms of the standard that it required us to apply in proving the invalidity of Claim 3. Specifically, the board faulted us for not identifying examples in the prior art of sound-damping material that follows a curved contour. And with all respect to the board, that's not the test. KSR says the analysis does not have to seek out precise teachings directed to the specific subject matter of the claim. It's enough if the patented arrangement results from taking one known element in the prior art and replacing it with another known element in the prior art with predictable results. And THX itself recognizes that standard on page 25 of its yellow brief. And we showed that here. We showed that the straight back wall of Tominori, which is made of sound-damping material, could very easily have been curved as the back wall in Sadae is. There's no suggestion that that would have produced any unexpected results whatsoever. The board notably did not disagree with, certainly didn't reject our experts' testimony that straight and curved back walls have both been used commonly in loudspeaker design with predictable results. Notably, THX's own expert, Dr. Elliott, did not disagree with that. He didn't controvert it. He didn't even address Claim 3 in his own declaration. It wasn't an issue. The board wasn't required to defer to your experts' testimony if the board thought that there was an otherwise support board, right? Well, the... Merely because your expert says that it would have been a common design choice doesn't mean that it would be without more evidence, right? The board notably did not disagree with that. The board didn't say that there was something patently distinct or something novel or non-obvious about using a curved wall. The only testimony on this point is Dr. Vipperman's, and there's no rejection by the board of that testimony because it wasn't controverted. Dr. Elliott didn't suggest that there was something so remarkably novel about taking a square wall and turning it into a semicircle that follows the contour of the speaker cone. He didn't even address it. It wasn't an issue at the depositions. It wasn't an issue at the oral hearing. It's not as though there are any secondary considerations here that are being asserted to say that Claim 3's circular wall is so remarkably novel that it created commercial success or solved a long-felt need or anything like that. It is a routine design choice that is frequently made in the prior art, and Dr. Vipperman's statement on that is uncontroverted. Where the board went astray is it stated that we were required to show curved, sound-damping material in a single prior art reference. We're not required to show that. It's enough to show that the teaching of a curved back wall in Sadae could easily have taught a skilled artisan to do the same thing with the back wall made of sound-damping material in Tominori. I thought it was... I saw the issue a little bit differently than you. I thought that Sadae did show a curved back wall, curved to match the speaker enclosure, and that the patent here contemplates embodiments in which the speaker cone is the same shape as the speaker enclosure, and that therefore the board is mistaken in suggesting that there wasn't a prior art reference that showed a curving to match the cone. That's exactly right, Judge Dyke. I was coming to that. That is another failure in the board's reasoning. It is... I mean, in all candor, it's a factual error. It's a substantial evidence problem as to the scope of Sadae. But Your Honor is absolutely right that the board was mistaken as to that. The reason for the mistake is because the board seems to have viewed figure 18 of Sadae as exhausting the disclosure of Sadae as to how far up the wall the sound-absorbing material can go. And as we explain, figure 18 does not exhaust all of Sadae's teachings. Sadae very clearly says that the pressure adjustment section, which even THX admits is sound-absorbing material, can go all the way up and around the back of the sound-guiding part into the sound source space 41, as Sadae calls it. So I fully agree, Your Honor. That is another fully sufficient ground on which to reverse on Claim 3, which is that Sadae does in fact show what the board mistakenly thought we had to show, which is a curved back wall formed of sound-absorbing material. And if the court wishes to reverse on that basis, obviously that's fully sufficient as well. Unless the court has further questions, I reserve the balance of my time. We will do that, Mr. Fleming. Thank you, Your Honor. Mr. Halpern, you have just under three minutes. Thank you, Your Honor. So first to quickly address Claim 3, Your Honors. The board actually found that Sadae does show curved sound-absorbing material, which is curved to the shape of the enclosure, right? It does not, no. It does not? Nope, nowhere. There is no drawing in Sadae and there is no textual disclosure in Sadae of back wall sound-damping material at all. If you look at the overhead view of Sadae that Apple provided, figure 18, they added the thick line showing acoustic material around the back, but it is not in the actual figure 18. And we have a contrast in our brief on page 12. But Sadae does say you can use sound-absorbing material, right? But it doesn't put it on the back wall for a very specific reason. The sound-absorbing material and the pressure-absorbing material in Sadae are there to deal with the narrowing of the duct, to deal with overpressure and wind noise. The back of the duct is the widest part of the duct and it's not where the sound is flowing out. So Sadae never puts back wall sound-damping material. And what the claim limitation at issue requires is sound-damping material forming the back wall and curved to the contour of the speaker cone. The board found at A34 that that limitation simply is not disclosed, not to mention motivated. So their argument is that the board was required to find a limitation that is neither disclosed nor with any more evidence of motivation than their expert saying it's a routine design choice, even though it looked at the references and said, well, there's nothing showing this curved contour back wall sound-damping material, which is what the claim limitation requires. And the only thing Apple relied on to the contrary was a disclosure that the sound-damping material goes from the sound source space 41 to part 42, and all the drawings show it starting in the middle of 41 and then proceeding outward to 42. And they argue that that language must have been interpreted, must be interpreted by the board to also wrap the sound-damping material around the back wall. That strikes us as a very unnatural reading of that language and it's not reflected in any of the drawings. I just wanted to come back to this one point on Tominori, if I may, which is that we did argue that there was a conflict between Tominori and that the references are required under Broadcom and the MEMS case. This is on page 23 of our brief. There has to be a showing that the references would not conflict with each other. And if you look at the Tominori abstract and the summary of the invention, the object is to realize satisfactory acoustic characteristics over a range of high to low frequencies. So sound-damping material that would selectively damp out all high frequencies and leave low frequencies untouched will directly conflict with that goal. Thank you, Mr. Halperin. Mr. Fleming has some rebuttal time on the cross-appeal. Thank you, Your Honor. Just two points, unless the Court has further questions. First of all, I discussed Figure 18. The whole point of our argument on Figure 18 is it does not fully exhaust the teachings of Sadiye. Judge Dike, Your Honor, is exactly right that Sadiye does disclose using sound-damping material all the way up the back wall. My references for that are page 582 of the appendix, where Sadiye says that a sound-damping material, for example, felt, quote, may be provided on an entire surface of the wall surface of Sound Guiding Part 40. And then again on 583 that this includes, quote, on the wall surface from the sound source space 41 to the sound path 42. And the figures in the patent, including Figure 18, make very clear that the sound source space 41 is the area immediately below the speaker, including the back wall. Dr. Viperman explains this in his declaration on A504. Again, without contradiction from THX's expert, he says that the felt or the pressure adjustment section is, quote, forming the outer shape of and lining the sidewalls of the sound duct 40, including the back wall. So the evidence is clear that the sound and there's nothing going against it on the other side other than attorney argument. There was no reference to anything that THX's expert said on this point because he didn't say anything on this point. And then the second point is there's no suggestion that there's anything all that difficult about this, particularly for someone with a master's degree and two years' experience designing speakers. All we're talking about is taking the sound damping material already in the back of Tomonori, which has a straight back wall, and making it into a curve that tracks the contour or follows the contour of the speaker cone. There's no suggestion that would have been beyond the skill of an ordinary artisan or that it would have had any kind of unexpected results. Unless the court has further questions, we respectfully submit that the court should reverse as to Claim 3 and affirm as to Claims 1 and 2. Thank you, Mr. Fleming. We'll take the case under advisement.